ELECTRONIC

**JUN 7, 2007**

CLARENCE MADDOX
CLERK U.S. DIST. CT.
S.D. OF FLA. - MIAMI

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
# 07-20444-CR-MARTINEZ/BANDSTRA
Case No. _____

18 U.S.C. § 1347
18 U.S.C. § 371
18 U.S.C. § 982
18 U.S.C. § 2
31 U.S.C. § 5317

UNITED STATES OF AMERICA

vs.

ESNARDO CABRERA HERNANDEZ,
YOEL MIRANDA QUINTERO,
ROLANDO MORALEDA, and
YADIRA ALLUE,

                      **Defendants.**

_____/

## INDICTMENT

The Grand Jury charges that:

### General Allegations

At all times relevant to this Indictment,

1.      The Medicare Program ("Medicare") was a federal health care program providing benefits to persons who were over the age of 65 or disabled. Medicare was administered by the Centers for Medicare and Medicaid Services ("CMS"), a federal agency under the United States Department of Health and Human Services. Medicare was a "health care benefit program," as defined by Title 18, United States Code, Section 24(b). Individuals who received benefits under Medicare were referred to as Medicare "beneficiaries."

2.      "Part B" of the Medicare program, covered certain durable medical equipment

("DME"), such as power pressure reducing air mattresses, urinary leg bags, wound dressing, and external catheters.

3.      Payments under the Medicare program were often made directly to a physician or provider of the goods or services, rather than to the beneficiary. This occurred when the provider accepted assignment of the right to payment from the beneficiary. In that case, the provider submitted the claim to Medicare for payment, either directly or through a billing company.

4.      Various entities were under contract to provide services to CMS. Medicare Part B was administered in Florida by Palmetto GBA (Palmetto), which, pursuant to contract with the United States Department of Health of Human Services, served as a contracted carrier to receive, adjudicate and pay Medicare Part B claims submitted to it by Medicare beneficiaries, physicians, or suppliers of health care items and services, including outpatient hospital services and services professional services provided by physicians.

5.      Physicians, clinics, and other health care providers that provided services to Medicare beneficiaries were able to apply for and obtain a "provider number." In the application, the provider acknowledged that to be able to participate in the Medicare program, the provider must comply with all Medicare related laws and regulations. A health care provider who was issued a Medicare provider number was able to file claims with Medicare to obtain reimbursement for services provided to beneficiaries.

6.      After obtaining a provider number, the doctor or clinic then submitted or caused the submission of claims to an entity that processed those claims for CMS. For example, in Florida, claims for most Part B services were submitted to Palmetto.

2

7.      In order to bill the Medicare Program for services rendered, physicians, clinics and other health care providers submitted a claims form, Form 1500, to Palmetto. When Form 1500 was submitted, usually in electronic form, the provider certified that the contents of the form were true, correct, complete, and that the form was prepared in compliance with the laws and regulations governing the Medicare Program.

8.      A Medicare claim was required to set forth, among other things, the beneficiary's name and Medicare identification number, the services performed for the beneficiary, the date the services were provided, the cost of the services, and the name and rendering provider identification number (PIN) of the physician or other health care provider who rendered the services.

9.      As a general rule, Medicare Part B would cover power pressure reducing air mattresses, urinary leg bags, wound dressing, and external catheters. Such services were paid for by Medicare Part B if, among other requirements, they were medically needed by the patients and ordered by a treating physician.

10.     Defendant **ESNARDO CABRERA HERNANDEZ**, a resident of Miami-Dade County, Florida, as of February 21, 2007, was the owner and operator of 1st Medical Supply, Inc. ("1st Medical"), a corporation organized and existing under the laws of Florida, purportedly doing business at 13370 SW 131 Street, Suite 103, Miami, Florida.

11.     Among other things, 1st Medical was purportedly engaged in business to provide power pressure reducing air mattresses, urinary leg bags, wound dressing, external catheters and other DME to Medicare beneficiaries, had a Medicare provider number, and was eligible to receive reimbursement from Medicare for outpatient services that were supplied to beneficiaries.

12.     Defendants **YOEL MIRANDA QUINTERO, ROLANDO MORALEDA,** and

3

**YADIRA ALLUE**, all residents of Miami-Dade County, Florida, were utilized and/or employed by **ESNARDO CABRERA HERNANDEZ** to cash checks containing the proceeds of 1st Medical's charges to Medicare.

## COUNTS 1-4

### (Health Care Fraud: 18 U.S.C. §§ 1347 and 2)

1.      Paragraphs 1 through 12 of the General Allegations section of this Indictment are realleged and incorporated by reference as if fully set forth herein.

2.      Beginning at least as early as in or around February 21, 2007, and continuing through in or around April 30, 2007, in Miami-Dade County, in the Southern District of Florida, and elsewhere, the defendant,

### ESNARDO CABRERA HERNANDEZ,

in connection with the delivery of and payment for health care benefits, items, and services, did knowingly and willfully execute, and attempt to execute, a scheme and artifice to defraud Medicare, a health care benefit program affecting commerce, as defined in Title 18, United States Code, Section 24(b), and to obtain, by means of materially false and fraudulent pretenses, representations, and promises, money and property owned by, and under the custody and control of, Medicare.

### Purpose of the Scheme and Artifice

3.      It was a purpose of the scheme and artifice for **ESNARDO CABRERA HERNANDEZ** to unlawfully enrich himself and his accomplices by submitting and causing the submission of false and fraudulent claims to Medicare for "durable medical equipment" ("DME") that were medically unnecessary and that had not been rendered.

4

## The Scheme and Artifice

The manner and means by which the defendant and his accomplices sought to accomplish the purpose of the scheme and artifice included, among other things:

4.    **ESNARDO CABRERA HERNANDEZ** and his accomplices caused 1st Medical to submit claims totaling as much as $1,754,596.47 to Medicare for medical services purportedly provided to Medicare beneficiaries, such claims falsely and fraudulently representing that these treatments had been necessary and had been provided to Medicare beneficiaries.

5.    **ESNARDO CABRERA HERNANDEZ**  obtained and maintained sole signature authority for 1st Medical's corporate account, Bank of America bank account number 00556806xxxx as of March 5, 2007.

6.    **ESNARDO CABRERA HERNANDEZ** received Medicare payments to 1st Medical for reimbursement totaling as much as $456,206.63, and such payments were deposited into 1st Medical's corporate account, Bank of America account number 00556806xxxx.

7.    **ESNARDO CABRERA HERNANDEZ** then transferred and disbursed, and caused the transfer and disbursement, of monies in 1st Medical's corporate account to be cashed by himself and others.

## Acts in Execution of the Scheme and Artifice

8.    On or about the dates specified as to each count below, in Miami-Dade County, in the Southern District of Florida, and elsewhere, **ESNARDO CABRERA HERNANDEZ**, in connection with the delivery of and payment for health care benefits, items, and services, did knowingly and willfully execute, and attempt to execute, the above-described scheme and artifice to defraud a health care benefit program affecting commerce, that is, Medicare, and to obtain, by

5

means of materially false and fraudulent pretenses, representations, and promises, money and property owned by, and under the custody and control of, said health care benefit program:

| Count | Claim Number | Beneficiary | Approx. Date Submitted to Medicare | Item Claimed; Approx. Amount Claimed |
|---|---|---|---|---|
| 1 | 107067859486000 | J.B. | 03/07/2007 | Powered Pressure-Reducing Air Mattress (E0277); $730.00 |
| 2 | 107067860066000 | B.M. | 03/07/2007 | Urinary Leg Bag-Latex (A5112); $692.40 |
| 3 | 107067860333000 | A.H. | 03/07/07 | Respiratory Assist Device (E0470); 232.94 |
| 4 | 107079734680000 | J.M. | 03/20/07 | Urinary Leg Bag; Latex (A5112); 692.40 |

In violation of Title 18, United States Code, Sections 1347 and 2.

## COUNT 5

### (Conspiracy: 18 U.S.C. § 371)

1.    Paragraphs 1 through 12 of the General Allegations section of this Indictment are realleged and incorporated by reference as if fully set forth herein.

2.    A "currency transaction report" ("CTR") was a report that was filled out on a United States Department of Treasury ("Treasury"), Fincen Form 104. A bank or other financial institution was required by federal law to file a CTR with Treasury for each financial transaction that involved

6

United States currency of more than $10,000. Such transactions included deposits, withdrawals, exchanges of currency, or other payments or transfers by, through, or to the bank of other financial institution.

3.     From in or around March 12, 2007, and continuing through on or about April 30, 2007, in Miami-Dade County, in the Southern District of Florida, the defendants,

**ESNARDO CABRERA HERNANDEZ,**
**YOEL MIRANDA QUINTERO,**
**ROLANDO MORALEDA, and**
**YADIRA ALLUE,**

did willfully, that is, with the intent to further the object of the conspiracy, and knowingly combine, conspire, confederate, and agree with each other and with others known and unknown to the Grand Jury, to commit an offense against the United States, that is, knowingly and for the purpose of evading the reporting requirements of Title 31, United States Code, Section 5313(a) and the regulations prescribed thereunder, to structure, and assist in structuring, transactions with one or more domestic financial institutions, in violation of Title 31, United States Code, Section 5324(a)(3).

**Purpose of the Conspiracy**

4.     It was the purpose of the conspiracy for **ESNARDO CABRERA HERNANDEZ, YOEL MIRANDA QUINTERO, ROLANDO MORALEDA, & YADIRA ALLUE** and their co-conspirators, to evade federal currency transactions reporting requirements by causing structured withdrawals of 1st Medical Supply money through the cashing of checks of less than $10,000.

**Manner and Means of the Conspiracy**

The manner and means by which the defendants and their co-conspirators sought to accomplish the purpose and object of the conspiracy included, among others, the following:

7

5.      **ESNARDO CABRERA HERNANDEZ** became the sole authorized signor on the Bank of America account on or about March 5, 2007.  Bank of America is a domestic financial institution.

6.      **ESNARDO CABRERA HERNANDEZ** and co-conspirators caused Medicare to deposit the proceeds from the alleged durable medical equipment provided by 1st Medical to Medicare beneficiaries into 1st Medical's Bank of America account.

7.      **ESNARDO CABRERA HERNANDEZ**  prepared and signed checks under $10,000 drawn on 1st Medical's Bank of America account so that Bank of America would not file CTRs with Treasury.

8.      To help disguise the withdrawal of large amounts of money in cash, **ESNARDO CABRERA HERNANDEZ** and other co-conspirators recruited individuals, including **YOEL MIRANDA QUINTERO, ROLANDO MORALEDA, & YADIRA ALLUE,**  to whom checks would be made payable in amounts under $10,000.

## Overt Acts

In furtherance of the conspiracy and to accomplish its purpose and object, at least one of the conspirators committed, or caused to be committed, at least one overt act, among others, in the Southern District of Florida:

1.      On or about March 23, 2007, **ESNARDO CABRERA HERNANDEZ** directed co-conspirator **ROLANDO MORALEDA** to cash a $9600 check made payable to **ROLANDO MORALEDA** and drawn on Bank of America Bank account number 00556806XXXX.

2.      On or about March 27, 2007, **YADIRA ALLUE** cashed a $9700 check made payable to herself and drawn on Bank of America Bank account number 00556806XXXX.

8

3.      On or about Mach 28, 2007, **YADIRA ALLUE** cashed a $8800 check made payable to herself and drawn on Bank of America Bank account number 00556806XXXX.

4.      On or about March 29, 2007, **YADIRA ALLUE** cashed a $9000 check made payable to herself and drawn on Bank of America Bank account number 00556806XXXX.

5.      On or about March 30, 2007, **ESNARDO CABRERA HERNANDEZ** directed co-conspirator **ROLANDO MORALEDA** to cash a $6800 check made payable to   **ROLANDO MORALEDA** and drawn on Bank of America Bank account number 00556806XXXX.

6.      On or about April 2, 2007, **ESNARDO CABRERA HERNANDEZ** directed co-conspirator **ROLANDO MORALEDA** to cash a $9800 check made payable to **ROLANDO MORALEDA** and drawn on Bank of America Bank account number 00556806XXXX.

7.      On or about April 5, 2007, **ROLANDO MORALEDA** cashed a $7600 check made payable to himself and drawn on Bank of America Bank account number 00556806XXXX.

8.      On or about April 6, 2007, **YADIRA ALLUE** cashed a $5600 check made payable to herself and drawn on Bank of America Bank account number 00556806XXXX.

9.      On or about April 12, 2007, **ROLANDO MORALEDA** cashed a $8700 check made payable to himself and drawn on Bank of America Bank account number 00556806XXXX.

10.     On or about April 16, 2007, **YADIRA ALLUE** cashed a $7900 check made payable to herself and drawn on Bank of America Bank account number 00556806XXXX.

11.     On or about April 17, 2007, **YOEL MIRANDA QUINTERO** cashed a $8600 check made payable to himself and drawn on Bank of America Bank account number 00556806XXXX.

12.     On or about April 18, 2007, **YOEL MIRANDA QUINTERO** cashed a $9900

9

check made payable to himself and drawn on Bank of America Bank account number 00556806XXXX.

13.     On or about April 18, 2007, **YADIRA ALLUE** cashed a $9600 check made payable to herself and drawn on Bank of America Bank account number 00556806XXXX.

14.     On or about April 19, 2007, **YADIRA ALLUE** cashed a $8700 check made payable to herself and drawn on Bank of America Bank account number 00556806XXXX.

15.     On or about April 19, 2007, **YADIRA ALLUE** cashed a $8600 check made payable to herself and drawn on Bank of America Bank account number 00556806XXXX.

16.     On or about April 20, 2007, **YADIRA ALLUE** cashed a $8800 check made payable to herself and drawn on Bank of America Bank account number 00556806XXXX.

17.     On or about April 20, 2007, **YOEL MIRANDA QUINTERO** cashed a $9600 check made payable to herself and drawn on Bank of America Bank account number 00556806XXXX.

All in violation of Title 18, United States Code, Section 371.

### FORFEITURE
### (18 U.S.C. § 982)
### (31 U.S.C. § 5317)

1.     The allegations contained in Counts 1-5 of this Indictment are realleged and incorporated by reference as though fully set forth herein for the purpose of alleging forfeiture to the United States of America of certain property in which the defendants, **ESNARDO CABRERA HERNANDEZ, YOEL MIRANDA QUINTERO, ROLANDO MORALEDA** and **YADIRA ALLUE**, have an interest in pursuant to the provisions of Title 18, United States Code, Section 982 and pursuant to the provisions of Title 31, United States Code, Section 5317.

10

2.      Pursuant to Title 18, United States Code, Section 982, upon conviction of **ESNARDO CABRERA HERNANDEZ** for any of the offenses charged in Counts 1 through 4 of this Indictment, the defendant shall forfeit to the United States any property, real or personal, that constitutes or is derived, directly or indirectly, from gross proceeds traceable to the commission of the offense. Such forfeiture shall include, but not be limited to $456,206.63 in United States currency, which represents the gross proceeds of the fraud.

3.      If the property described above as being subject to forfeiture, as a result of any act or omission of **ESNARDO CABRERA HERNANDEZ,**

(a)     cannot be located upon the exercise of due diligence;

(b)     has been transferred or sold to or deposited with a third person;

(c)     has been placed beyond the jurisdiction of the Court;

(d)     has been substantially diminished in value; or

(e)     has been commingled with other property which cannot be subdivided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), as made applicable through Title 18, United States Code, Section 982(b)(1), to seek forfeiture of any other property of **ESNARDO CABRERA HERNANDEZ** up to the value of the above forfeitable property.

4.      Pursuant to Title 31, United States Code, Section 5317, upon conviction of **ESNARDO CABRERA HERNANDEZ, YOEL MIRANDA QUINTERO, ROLANDO MORALEDA** and **YADIRA ALLUE,** for the offense charged in Count 5 of this Indictment, the defendants shall forfeit to the United States all property, real or personal, involved in the offense and

11

any property traceable thereto.  Such forfeiture shall include, but not be limited to $147,300

in United States currency.

     5.    If the property described in paragraph 4 above as being subject to forfeiture, as a

result of any act or omission of **ESNARDO CABRERA HERNANDEZ, YOEL MIRANDA**

**QUINTERO, ROLANDO MORALEDA** and **YADIRA ALLUE,**

       (a)    cannot be located upon the exercise of due diligence;

       (b)    has been transferred or sold to or deposited with a third person;

       (c)    has been placed beyond the jurisdiction of the Court;

       (d)    has been substantially diminished in value; or

       (e)    has been commingled with other property which cannot be subdivided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), as made

applicable through Title 31, United States Code, Section 5317(c)(1)(B), to seek forfeiture of any

other property of **ESNARDO CABRERA HERNANDEZ, YOEL MIRANDA QUINTERO,**

**ROLANDO MORALEDA** and **YADIRA ALLUE,** up to the value of the above forfeitable

property.

All pursuant to Title 18, United States Code, Section 982, Title 31, United States Code, Section 5317 and the procedures set forth at Title 21, United States Code, Section 853, as made applicable through Title 18, United States Code, Section 982(b)(1) and Title 31, United States Code, Section 5317(c)(1)(B).

A TRUE BILL

FOREPERSON

R. ALEXANDER ACOSTA
UNITED STATES ATTORNEY

RANDALL D. KATZ
ASSISTANT UNITED STATES ATTORNEY

13

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

UNITED STATES OF AMERICA

CASE NO. _____

vs.

ESNARDO CABRERA HERNANDEZ,
YOEL MIRANDA QUINTERO,
ROLANDO MORALEDA, and
YADIRA ALLUE,

**CERTIFICATE OF TRIAL ATTORNEY***

_____/
                Defendants.

**Superseding Case Information**:

**Court Division:** (Select One)

| | | | |
|---|---|---|---|
| X | Miami | Key West | |
| | FTL | WPB | FTP |

New Defendant(s)          Yes ___          No ___
Number of New Defendants
Total number of counts          ___

I do hereby certify that:

1.   I have carefully considered the allegations of the indictment, the number of defendants, the number of probable witnesses and the legal complexities of the Indictment/Information attached hereto.

2.   I am aware that the information supplied on this statement will be relied upon by the Judges of this Court in setting their calendars and scheduling criminal trials under the mandate of the Speedy Trial Act, Title 28 U.S.C. Section 3161.

3.   Interpreter:   (Yes or No)   Yes
     List language and/or dialect   Spanish _____

4.   This case will take   5-7   days for the parties to try.

5.   Please check appropriate category and type of offense listed below:
     (Check only one)                                    (Check only one)

| | | | | |
|---|---|---|---|---|
| I | 0 to 5 days | | Petty | |
| II | 6 to 10 days | X | Minor | |
| III | 11 to 20 days | | Misdem. | |
| IV | 21 to 60 days | | Felony | X |
| V | 61 days and over | | | |

6.   Has this case been previously filed in this District Court? (Yes or No)   No
     If yes:
     Judge: _____   Case No. _____
     (Attach copy of dispositive order)
     Has a complaint been filed in this matter?   (Yes or No)   No
     If yes:
     Magistrate Case No. _____
     Related Miscellaneous numbers: _____
     Defendant(s) in federal custody as of _____
     Defendant(s) in state custody as of _____
     Rule 20 from the _____   District of _____

     Is this a potential death penalty case? (Yes or No) No _____

7.   Does this case originate from a matter pending in the U.S. Attorney's Office prior to
     April 1, 2003? ___ Yes   x   No

8.   Does this case originate from a matter pending in the U. S. Attorney's Office prior to
     April 1, 1999? ___ Yes   x   No
     If yes, was it pending in the Central Region? ___ Yes ___ No

9.   Does this case originate from a matter pending in the Northern Region of the U.S. Attorney's Office prior
     to October 14, 2003? ___ Yes   x   No

10.  Does this case originate from a matter pending in the Narcotics Section (Miami) prior to   May 18,
     2003 ?                          ___ Yes   x   No

                                        RANDALL D. KATZ
                                        ASSISTANT UNITED STATES ATTORNEY
                                        COURT ID No. A5500942

Penalty Sheet(s) attached                                        REV.1/14/04

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### PENALTY SHEET

**Defendant's Name:** <u>**ESNARDO CABRERA HERNANDEZ**</u>        **Case No:**_____

Counts #: 1-4

__Health Care Fraud_____

___Title 18, United States Code, Section 1347 and 2_____

**\*Max. Penalty:** 10 years' imprisonment_____

Count #: 5

___Conspiracy to Structure Transactions to Evade Reporting Requirements_____

___Title 18, United States Code, Section 371_____

**\*Max. Penalty:** 5 years' imprisonment_____

**\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.**

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### PENALTY SHEET

**Defendant's Name:** YOEL MIRANDA QUINTERO            **Case No:**_____

Count #: 1

   Conspiracy to Structure Transactions to Evade Reporting Requirements

   Title 18, United States Code, Section 371

**\*Max. Penalty:** 5 years' imprisonment

**\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.**

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

## PENALTY SHEET

**Defendant's Name**: <u>ROLANDO MORALEDA</u>          **Case No:**_____

Count #: 1

  <u>Conspiracy to Structure Transactions to Evade Reporting Requirements</u>

  <u>Title 18, United States Code, Section 371</u>

**\*Max. Penalty:** 5 years' imprisonment

**\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.**

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

<u>PENALTY SHEET</u>

Defendant's Name: <u>YADIRA ALLUE</u>                    Case No:_____

Count #: 1

   <u>Conspiracy to Structure Transactions to Evade Reporting Requirements</u>

   <u>Title 18, United States Code, Section 371</u>

*Max. Penalty: 5 years' imprisonment

**\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.**